UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROBERT W. MONSTER, *et al.*,

                Plaintiffs,

     v.

CREATD, INC., *et al.*,

                Defendants.

Case No. C21-1177-MLP

ORDER

## I.      INTRODUCTION

This matter is before the Court on the Motion to Dismiss ("Monster Motion") filed by Plaintiffs/Counterclaim Defendants Robert W. Monster and Anonymize, Inc., ("Anonymize") and Third-Party Defendant Epik Holdings, Inc., ("Epik") (collectively, the "Monster Parties") seeking to dismiss Defendant/Counterclaim Plaintiff/Third-Party Plaintiff Creatd, Inc.'s ("Creatd") First Amended Counterclaims. (Monster Mot. (dkt. # 30).) Creatd filed its opposition (Creatd Resp. (dkt. # 35)), and the Monster Parties filed a reply (Monster Reply (dkt. # 36)). The Court conducted oral argument on May 16, 2022. (Dkt. # 38.) Having considered the parties' submissions, oral argument, the balance of the record, and the governing law, the Monster Parties' Motion (dkt. # 30) is GRANTED in part and DENIED in part.

## II.   BACKGROUND

Mr. Monster is the CEO of Anonymize and Epik. (Compl. (dkt. # 1) at ¶¶ 3-4.) Epik is a domain-name registrar, and Anonymize is "Epik's privacy service for domain-name registrations[.]" (*Id.* at ¶ 4.) Creatd is the owner of the trademark "Vocal" and operates "'Vocal' and 'vocal.media', a storytelling web platform for creators." (Am. Counterclaim (dkt. # 29) at ¶¶ 6-7.)

This action centers on a dispute over an internet domain name, VOCL.com ("the Domain Name"). Both parties acknowledge that this action functions as an appeal from a World Intellectual Property Organization ("WIPO") order (the "WIPO Order" (dkt. # 29-1)) requiring Mr. Monster and Anonymize to transfer the Domain Name to Creatd.[1] (*See* Creatd Resp. at 12 ("The Monster Parties have brought this action to attempt to reverse the findings of [the WIPO Order].")); Monster Mot. at 15 ("this action is effectively an 'appeal' from [the WIPO Order]").)

Beginning in September 2020, the record owner of the Domain Name was Anonymize and the beneficial owner was Ashwin Vinkhona. (WIPO Order at 2, 5; *see also* Am. Counterclaim at ¶¶ 19-20.) At the time, the Domain Name website displayed a "NameRenter landing page" that offered to rent the Domain Name for $100 per year. (WIPO Order at 10.)

On or about March 7, 2021, "Mike Lindell, an American businessman and the CEO of MyPillow" sought to purchase the Domain Name for "a new social media service with an emphasis on free speech that he planned to call VOCL." (WIPO Order at 2; *see also* Am. Counterclaim at ¶ 21.) On March 9, 2021, Mr. Lindell's agent purchased the Domain Name from Mr. Vinkhona for $40,000 and, shortly thereafter, the Domain Name website began to display

---

[1] Creatd's Amended Counterclaims attach the WIPO Order, from which some of this factual background is drawn. *See Shaver v. Operating Engineers Local 428 Pension Trust Fund*, 332 F.3d 1198, 1201 (9th Cir. 2003) ("Generally, on a 12(b)(6) motion, [the Court] should consider only the pleadings.").

1    information stating that "Vocl.com" was "[c]oming [s]oon" with a link to another website of Mr.

2    Lindell's. (WIPO Order at 2; *see also* Am. Counterclaim at ¶¶ 22-24.) Creatd alleges Mr.

3    Monster received approximately $5,000 as a commission on the sale. (Am. Counterclaim at

4    ¶ 23.) Mr. Lindell became the beneficial owner of the Domain Name. (WIPO Order at 5.)

5        On March 11, 2021, Creatd sent a cease-and-desist letter to Mr. Lindell stating that the

6    Domain Name was "confusingly similar to Creatd's registered 'Vocal' mark" and demanding

7    that he transfer the Domain Name to Creatd. (Answer, Ex. C (dkt. # 12-3) at 1, 3; Am.

8    Counterclaim at ¶¶ 27-28.) "In an interview the next day, Mr. Lindell responded to a question

9    regarding his new site's name by stating that 'we looked into [the name VOCL] and we believe it

10   would be confusing, so we are going to announce a different name and URL.'" (WIPO Order at

11   2 (alteration in original).) On or about March 13, 2021, Mr. Monster purchased the Domain

12   Name from Mr. Lindell for $10,000, despite having "notice of this potential dispute[.]" (*Id.* at 2,

13   5.)

14       On April 7, 2021, Creatd filed a complaint with the WIPO. (WIPO Order at 1; Am.

15   Counterclaim at ¶ 33.) On August 16, 2021, an Administrative Panel ("Panel") of the WIPO

16   found that: (1) the Domain Name was "confusingly similar" to Creatd's "VOCAL" mark; (2)

17   Mr. Monster and Anonymize "lack[ed] rights or legitimate interests in the disputed domain

18   name"; and (3) Mr. Monster and Anonymize "registered and used the [Domain Name] in bad

19   faith." (WIPO Order at 7-10.) The WIPO Panel noted that respondents Mr. Monster and

20   Anonymize, their attorney, and Epik each provided conflicting information about who owned the

21   Domain Name and when. (*See id.* at 4-5 ("The Respondent's story has been a shifting one.").)

22   The WIPO Panel also rejected Mr. Monster's and Anonymize's counterclaim alleging that

23

1   Creatd brought its complaint in bad faith. (*Id.* at 10-11.) The WIPO Panel "order[ed] that the

2   [Domain Name] be transferred to [Creatd]." (*Id.* at 11.)

3        The WIPO Panel found that, "at least as early as April 15, 2021, and continuing through

4   the date of [its] decision," the Domain Name displayed a notice that the "Domain owner" is

5   "accepting offers" for the Domain Name. (WIPO Order at 10.) Creatd alleges that this notice

6   remains, and that the Domain Name has not been transferred to it. (Am. Counterclaim at

7   ¶¶ 68-69.)

8        On August 30, 2021, Mr. Monster and Anonymize brought this action for declaratory

9   judgment that they are entitled to keep the Domain Name. (*See* Compl.) Creatd disputed the

10  claims and raised several counterclaims against the Monster Parties. (*See* Answer (dkt. # 12);

11  Am. Counterclaim.) In its counterclaims, Creatd alleges the Monster Parties acted unlawfully in

12  obscuring the Domain Name holder, lying in sworn statements in the WIPO proceeding, and

13  conspiring to prevent Creatd from exercising its trademark rights. (Am. Counterclaim at

14  ¶¶ 59-66.)

15       In their motion to dismiss the counterclaims, the Monster Parties argue that Creatd's

16  counterclaims fail. They argue that conduct in private arbitration or domain-name registration

17  cannot form the basis for consumer protection claims, that Creatd has not properly alleged bad

18  faith, that they are justified in continuing to hold the Domain Name, that they have not harmed

19  Creatd's trademark, and that Creatd has not identified any specific business expectancies that

20  were damaged or any benefit it has conferred on them. (Monster Mot.)

21                        **III.   LEGAL STANDARD**

22       When considering a motion to dismiss under Rule 12(b)(6), the court construes the

23  complaint in the light most favorable to the nonmoving party. *Livid Holdings Ltd. v. Salomon*

ORDER - 4

*Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). The court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). The court, however, is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 677-78. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557). Dismissal under Rule 12(b)(6) can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## IV.    DISCUSSION

### A.    Anti-cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d)

The Monster Parties argue that Creatd has failed to properly allege bad faith, as required by the ACPA. (Monster Mot at 11; Monster Reply at 5.) Creatd alleges bad faith in registering the Domain Name, selling the Domain Name to Mr. Lindell, obscuring the ownership of the Domain Name to prevent Creatd from exercising its trademark rights, buying the Domain Name

back from Mr. Lindell, and continuing to market the Domain Name for sale. (Am. Counterclaim at ¶¶ 100-09.)

The ACPA section of the trademark statute "establishes civil liability for 'cyberpiracy' when a plaintiff proves that: (1) the defendant registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a protected mark owned by the plaintiff; and (3) the defendant acted 'with bad faith intent to profit from that mark.'" *DSPT Int'l., Inc. v. Nahum*, 624 F.3d 1213, 1218-19 (9th Cir. 2010) (quoting 15 U.S.C. § 1125(d)(1)(A)(i)). The Monster Parties dispute only the third element. The ACPA provides examples of bad faith intent.

> In determining whether a person has a bad faith intent . . . , a court may consider factors such as, but not limited to . . . the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services[.]

15 U.S.C. § 1125(d)(1)(B). In addition, the Ninth Circuit has held that using another's protected mark in a domain name "to get leverage in a business dispute" is sufficient to establish "bad faith intent." *DSPT Int'l.*, 624 F.3d at 1219-20.

Here, at minimum, Creatd has properly alleged bad faith based on the Monster Parties offering the Domain Name for sale, without intending to use it themselves, while knowing it is confusingly similar to Creatd's protected mark. At the motion to dismiss stage, these alleged facts justify an inference that the Monster Parties are acting in bad faith, holding on to the Domain Name as leverage against Creatd or to sell the Domain Name for financial gain without using or intending to use it in offering any goods or services. Accordingly, the Court denies the Monster Parties' motion to dismiss Creatd's ACPA claim.

1    Creatd also alleges a claim for contributory violation of the ACPA. (Am. Counterclaim at

2    ¶¶ 111-17.) The Ninth Circuit, however, has expressly held that "the ACPA does not include a

3    cause of action for contributory cybersquatting[.]" *Petroliam Nasional Berhad v. GoDaddy.com,*

4    *Inc.*, 737 F.3d 546, 550 (9th Cir. 2013). Accordingly, the Court grants the Monster Parties'

5    motion to dismiss Creatd's contributory ACPA claim.

6         **B.     Washington Consumer Protection Act, RCW 19.86.093**

7         The Monster Parties argue Creatd has not properly alleged any of the elements of a

8    Washington Consumer Protection Act ("CPA") claim. (Monster Mot. at 6-7; Monster Reply at

9    2.) Creatd contends its allegations that the Monster Parties submitted conflicting sworn

10   testimony and lied under oath in the WIPO proceeding, engaged in cyberpiracy, and failed to act

11   as a neutral registrar meet the requirements of the statute. (Creatd Resp. at 8.)

12        The CPA was enacted "to protect the public from 'unfair or deceptive acts or practices in

13   the conduct of any trade or commerce.'" *Indoor Billboard/Wash., Inc. v. Integra Telecom of*

14   *Wash., Inc.*, 162 Wash. 2d 59, 73 (2007) (quoting RCW 19.86.020). "The CPA is to be 'liberally

15   construed that its beneficial purposes may be served.'" *Id*. "The statutory purpose is broadly

16   worded not only to protect the public but also, and distinctly, to foster 'fair and honest

17   competition.'" *Thornell v. Seattle Serv. Bureau, Inc.*, 184 Wash. 2d 793, 800 (2015) (quoting

18   RCW 19.86.920).

19        To plead a CPA claim, a plaintiff must allege "(1) an unfair or deceptive act (2) in trade

20   or commerce (3) that affects the public interest, (4) injury to the plaintiff in his or her business or

21   property, and (5) a causal link between the unfair or deceptive act complained of and the injury

22   suffered." *Trujillo v. Nw. Tr. Servs., Inc.*, 183 Wash. 2d 820, 834-35 (2015). "A plaintiff alleging

23

1    injury under the CPA must establish all five elements." *Michael v. Mosquera-Lacy*, 165 Wash.

2    2d 595, 602 (2009).

3        "[A]s a general proposition, conduct that constitutes federal trademark infringement will

4    also satisfy the five . . . elements and therefore violate the [CPA.]" *Nat'l Prod., Inc. v. Arkon*

5    *Res., Inc.*, 294 F. Supp. 3d 1042, 1050 (W.D. Wash. 2018). Creatd contends that cybersquatting

6    in violation of the ACPA section of the trademark statue similarly satisfies the five elements of

7    the CPA. Creatd alleges the Monster Parties "obscured the accurate ownership record of the

8    Domain Name 'vocl.com' to prevent Creatd from exercising its right to protect its trademark."

9    (Am. Counterclaim at ¶ 50.)

10            *1.    Unfair or Deceptive Act or Practice*

11        "The first element of a private CPA action is an unfair or deceptive act or practice. A

12    plaintiff need not show that the act in question was *intended* to deceive, but that the alleged act

13    had the *capacity* to deceive a substantial portion of the public." *Hangman Ridge Training*

14    *Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 785 (1986) (internal citation omitted).

15    The Monster Parties argue that alleged misconduct in connection with the WIPO proceeding

16    cannot be an unfair or deceptive act or practice because conduct in a private arbitration does not

17    have the capacity to deceive the public or mislead a reasonable consumer.[2] (Monster Reply at 7.)

18    Creatd alleges the Monster Parties acted with "intent to mislead the public as to the 'Vocal'

19

20

---

21    [2] The Monster Parties also argue Creatd has not alleged facts supporting its accusation that Epik failed to
      act as a neutral domain name registrar. (Defs.' Reply at 2.) But Creatd's allegations indicate Mr. Monster,

22    on behalf of Epik, "gave conflicting sworn written testimony about the true ownership record of the
      Domain Name." (Am. Counterclaim at ¶ 41.) And Creatd's counterclaim incorporates the WIPO Order,

23    which found "misrepresentations [were] made in the context of this proceeding [by the] registrar[.]"
      (WIPO Order at 11.) These are sufficient factual allegations to support the claim that Epik did not act as a
      neutral registrar, in furtherance of the Monster Parties' alleged efforts to misappropriate the Domain
      Name.

ORDER - 8

trademark[.]" (Am. Counterclaim at ¶ 82.) Creatd argues consumers are misled and harmed by domain names that infringe trademarks. (*See* Creatd Resp. at 8.)

In a trade name infringement case, the Washington Supreme Court held that the first prong of the CPA was satisfied where appropriation of plaintiff's name "tends to and does deceive or mislead persons of ordinary caution into the belief that they are dealing with one concern when in fact they are dealing with the other." *Nordstrom, Inc. v. Tampourlos*, 107 Wash. 2d 735, 740 (1987) (Nordstrom's trade name infringed by use of name "Nostrum" in same font).

Here, Creatd's claim is that consumers who visit the Domain Name expecting to find the Vocal community may be deceived. Although some of the specific acts Creatd alleges took place in a private arbitration, the overall effect of the alleged actions is to appropriate the allegedly infringing Domain Name. Just as trademark infringement on a store's sign has the capacity to deceive the viewing public, the cybersquatting alleged here may lead to confusion among consumers searching the internet for Creatd's Vocal community. Such consumer confusion has the capacity to deceive the public. *See Nat'l Prod., Inc.*, 294 F. Supp. 3d at 1050 ("[I]n light of the jury's finding that NPI's trade dress was valid and infringed by Arkon, the first element of the WCPA has been met.").

The Monster Parties argue that they filed this action under 15 U.S.C. § 1114(2)(D)(v), which expressly authorizes such a civil action, and "[f]iling a federal lawsuit to exercise a federal statutory right" cannot deceive a substantial portion of the public. (Monster Mot. at 8.) But Creatd does not allege that filing this lawsuit violated the CPA. It is the use of the Domain Name that has the capacity to deceive the public. The Monster Parties purchased the Domain Name from Mr. Lindell after being informed that it violated Creatd's trademark and continued to use it. Thus, Creatd sufficiently alleges unfair or deceptive acts or practices.

2.      *Trade or Commerce*

To satisfy the second element, a plaintiff must show that the activity satisfying the first element "has occurred in the conduct of any trade or commerce." *Hangman Ridge*, 105 Wash. 2d at 785-86. The Monster Parties argue that conduct during a private arbitration or in a domain-name registration does not occur in trade or commerce. (Monster Reply at 3.) However, each of the specific acts alleged are in service to the overall allegation that the Monster Parties are using the Domain Name to infringe Creatd's trademark. (*See* Creatd Resp. at 8 ("By definition, a trademark is a mark used in trade.").)

Trade or commerce is broadly defined to include "any commerce directly or indirectly affecting the people of the state of Washington." RCW 19.86.010(2). A trademark infringement claim "involving the use of a trade name advertising to the public . . . falls squarely within this broad definition" of trade or commerce. *Nordstrom, Inc.*, 107 Wash. 2d at 740. Similarly, Creatd uses its trade name to advertise to the public. The cyberpiracy alleged here affects people in Washington on the internet, just as a trademark-infringing store sign affects people who see it. Creatd has adequately alleged unfair or deceptive practices occurring in trade or commerce.

3.      *Public Interest*

An act or practice is "injurious to the public interest" if it "had [or] has the capacity to injure other persons." RCW 19.86.093. The Monster Parties argue that "conduct during the [WIPO proceeding] or Creatd's particular claim with respect to the Domain Name" could not injure other persons. (Monster Reply at 3-4.)

In cases alleging trademark infringement, "[c]onfusion of the public typically satisfies the 'public interest' element of the [Washington] CPA." *Lahoti v. Vericheck, Inc.*, 636 F.3d 501, 510 (9th Cir. 2011). Similarly here, Creatd alleges the Monster Parties used the trademark-infringing

Domain Name and thereby "misled the general public[.]" (Am. Counterclaim at ¶ 88.) At this stage of litigation, these allegations of confusion of the public are sufficient to show acts or practices injurious to the public interest.

#### 4. *Injury to Business or Property*

The fourth element requires showing the plaintiff was "injured in his or her business or property[.]" RCW 19.86.090. "No monetary damages need be proven, as nonquantifiable injuries such as loss of goodwill suffice for this element." *Nat'l Prod., Inc.*, 294 F. Supp. 3d at 1051. The Monster Parties challenge Creatd's allegation that they "conspired to rid the Domain Name of the taint of infringement[.]" (Am. Counterclaim at ¶ 72.) The Monster Parties argue that "[a]s an alleged trademark owner, Creatd could only *benefit* from eliminating infringement[.]" (Monster Mot. at 10.) This argument relies on a misunderstanding Creatd's allegations. Creatd alleges the Monster Parties hid the true ownership of the Domain Name and made infringement harder to combat, not that they eliminated infringement. (*See* Am. Counterclaim at ¶ 50.) Creatd alleges injury because the Monster Parties acted "to mislead the public as to the 'Vocal' trademark," causing Creatd harm because it "was not able to adequately protect its trademark and suffered harm to its business." (Am. Counterclaim at ¶¶ 82-83.)

In a trademark infringement case, the injury element is met where trade name "infringement injured [plaintiff's] business reputation and goodwill." *Nordstrom, Inc.*, 107 Wash. 2d at 741; *see also Nat'l Prod., Inc.*, 294 F. Supp. 3d at 1051 (The injury element can be satisfied by "evidence regarding potential loss of customers, as well as harm to [plaintiff's] reputation and goodwill."). This Court has found that "loss of control over its online business reputation . . . is sufficient to satisfy the CPA's injury prong." *BBC Grp. NV LLC v. Island Life Rest. Grp. LLC*, 2020 WL 758070, at *3 (W.D. Wash. Feb. 14, 2020). Here, Creatd alleges "loss

of customer goodwill and reputational damage[.]" (Am. Counterclaim at ¶ 95.) Because people looking for the Vocal community online may be misdirected by the Monster Parties' use of the Domain Name, leading to a loss of customers, Creatd has adequately alleged injury to its business at this early stage of litigation.

5.    *Causation*

The Monster Parties argue that Creatd "fails to allege how getting 'rid' of infringement could possibly have resulted in lost revenue, lost goodwill, or reputational damage[.]" (Monster Mot. at 10.) Again, the thrust of Creatd's allegations is that the Monster Parties misappropriated the Domain Name. Creatd has adequately alleged that this activity caused its injury.

Because Creatd has sufficiently alleged all five elements of a CPA claim, the Monster Parties' motion to dismiss this claim is denied.

**C.    Conversion**

Creatd alleges "the Domain Name . . . was the rightful intellectual property of Creatd" and the "Monster Parties have unlawfully converted Creatd's intellectual property through trademark infringement." (Am. Counterclaim at ¶¶ 119, 121.) The Monster Parties argue they have not interfered with Creatd's "'VOCAL' trademark" and that they have lawful justification for keeping the Domain Name. (Monster Mot. at 11-12.) The Monster Parties also argue, relying on New York law, that the VOCAL trademark is "intangible property [that] cannot be the subject of a conversion claim[.]" (*Id.* at 12.)

Conversion is "the act of willfully interfering with any chattel, without lawful justification, whereby any person entitled thereto is deprived of the possession of it." *Wash. State Bank v. Medalia Healthcare, LLC*, 96 Wash. App. 547, 554 (Wash. App. Div. 1, 1999) (citation omitted). In Washington, "'[c]hattel' includes both tangible and intangible goods, such as

corporate property." *Lang v. Hougan*, 136 Wash. App. 708, 718 (Wash. App. Div. 2, 2007); *see also In re Marriage of Langham & Kolde*, 153 Wash. 2d 553, 566 (2005) ("[W]e hold that stock options are property and are converted when exercised."). Allegations that "Defendants intentionally interfered with [plaintiff's] trademarks" without lawful justification are sufficient to "state[ ] a claim for conversion[.]" *Kische USA LLC v. Simsek*, 2016 WL 7212534, at *15 (W.D. Wash. Dec. 13, 2016).

The Domain Name is intangible property to which Creatd alleges it is entitled. Although the Monster Parties argue that they are not interfering with the VOCAL trademark by keeping the Domain Name, Creatd's allegations that the Domain Name infringes its trademark are sufficient at this stage. Creatd has adequately alleged that the Monster Parties deprived it of the Domain Name.

The Monster Parties' argument that they have lawful justification for keeping the Domain Name because Creatd acknowledges that filing this lawsuit was "within their rights" is insufficient to dismiss the conversion claim at this point. (Monster Reply at 7.) Creatd's allegations encompass periods of time prior to the filing of this action. The purpose of this action is to determine whether the Monster Parties have lawful justification to keep the Domain Name, and the Court cannot conclude at this point that the Monster Parties will prevail. Thus, Creatd has sufficiently alleged that the Monster Parties lacked lawful justification to keep the Domain Name.

Creatd has adequately alleged the elements of conversion. The Monster Parties' motion to dismiss is denied with respect to the conversion claim.

1

### D.     Unfair Competition

2      Creatd alleges the "Monster Parties have unlawfully been unfairly competing with Creatd

3 through infringing on Creatd's trademarked intellectual property." (Am. Counterclaim at ¶ 130.)

4 The Monster Parties argue there can be no unfair competition because they do not "operate a

5 competing social-media site." (Monster Reply at 8.)

6      Creatd's counterclaim does not specify the basis of its unfair competition claim. Creatd's

7 briefing suggests its claim is based on the Lanham Act and/or Washington common law unfair

8 competition. (Creatd Resp. at 13.) Under either, Creatd must show that there is a likelihood of

9 consumer confusion. *See eAcceleration Corp. v. Trend Micro, Inc*, 408 F. Supp. 2d 1110, 1114

10 (W.D. Wash. 2006) (To establish "unfair competition claims under § 43(a) of the Lanham Act

11 . . . the plaintiff must 'prove [1] the existence of a trademark and [2] the subsequent use by

12 another in a manner likely to create consumer confusion.'" (quoting *Comedy III Prod., Inc. v.*

13 *New Line Cinema*, 200 F.3d 593, 594 (9th Cir. 2000)); *Pioneer First Fed. Sav. & Loan Ass'n v.*

14 *Pioneer Nat. Bank*, 98 Wash. 2d 853, 860 n.1 (Wash. 1983) ("our State follows a 'likelihood of

15 confusion' standard for trademark infringement claims" in an unfair competition suit).

16      Courts in the Ninth Circuit consider the following eight "factors for guidance in

17 determining the likelihood of confusion:"

18      similarity of the conflicting designations; relatedness or proximity of the two
       companies' products or services; strength of [plaintiff's] mark; marketing channels
19      used; degree of care likely to be exercised by purchasers in selecting goods;
       [defendant's] intent in selecting its mark; evidence of actual confusion; and
20      likelihood of expansion in product lines.

21 *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1053-54 (9th Cir. 1999).

22 "[T]his eight-factor test for likelihood of confusion is pliant. Some factors are much more

23 important than others, and the relative importance of each individual factor will be

ORDER - 14

1    case-specific." *Id.* at 1054. "[S]ome factors—such as the similarity of the marks and whether the

2    two companies are direct competitors—will always be important[.]" *Id.*

3          Creatd has not alleged facts showing that any of these factors would weigh in its favor.

4    The factor of whether the two companies are direct competitors appears to weigh strongly

5    against Creatd. Creatd operates a "storytelling web platform for creators," while the Monster

6    Parties sell and rent domain names. (Am. Counterclaim at ¶ 8.) And there is no showing that

7    either party is likely to expand into the other's product lines. Thus, under federal law, "there may

8    be no consumer confusion—and thus no trademark infringement—if the alleged infringer is in a

9    different geographic area or in a wholly different industry." *Brookfield Commc'ns, Inc.*, 174 F.3d

10   at 1054. Similarly, under Washington law, "[t]here can be no unfair trade competition unless

11   there is competition." *Pioneer First Fed.*, 98 Wash. 2d at 862 (no unfair competition where trial

12   court found "parties do not compete in the same [geographical] market area").

13          Because Creatd has not alleged competition between it and the Monster Parties, Creatd's

14   unfair competition claim is dismissed for failure to state a claim.

15       **E.**      **Tortious Interference with Business Relations**

16          Under Washington law, to plead a claim for tortious interference with a business

17   expectancy, a plaintiff must allege:

18        (1) the existence of a valid contractual relationship or business expectancy; (2) that
        defendants had knowledge of that relationship; (3) an intentional interference
19        inducing or causing a breach or termination of the relationship or expectancy; (4)
        that defendants interfered for an improper purpose or used improper means; and (5)
20        resultant damage.

21   *Leingang v. Pierce Cty. Med. Bureau, Inc.*, 131 Wash. 2d 133, 157 (1997). The plaintiff must

22   allege "losses [tied] to specific relationships between [plaintiff] and identifiable third parties."

23   *Pac. Nw. Shooting Park Ass'n v. City of Sequim*, 158 Wash. 2d 342, 352-53 (2006). "An

invitation to some amorphous group of people does not magically become a relationship merely because some members of the group might" consider forming a relationship. *Id.* at 353 n.2.

Creatd's counterclaim alleges the Monster Parties "prevented third parties, including clients and investment banks, from extending relationships with Creatd." (Am. Counterclaim at ¶¶ 142-43.) However, Creatd fails to identify any specific relationships. At oral argument, Creatd conceded that its tortious interference claim was insufficient. Accordingly, the Court grants the Monster Parties' motion to dismiss this claim.

### F.   Civil Conspiracy

The Monster Parties argue that Creatd has not met the high standard to plead conspiracy. (Monster Mot. at 16.) To establish a common law claim for civil conspiracy, a plaintiff is required to prove "by clear, cogent, and convincing evidence that: (1) two or more people combined to accomplish an unlawful purpose, or combined to accomplish a lawful purpose by unlawful means; and (2) the conspirators entered into an agreement to accomplish the conspiracy." *Bonneville v. Pierce County.*, 148 Wash. App. 500, 518 (Wash. App. Div. 1 2008) (internal quotation marks and citations omitted). "Mere suspicion or commonality of interests is insufficient to prove a conspiracy." *Id.*

Creatd alleges the Monster Parties conspired with each other and Mr. Lindell. (Am. Counterclaim at ¶¶ 148-52.) No factual allegations, however, support the conclusion that Mr. Lindell entered into any agreement that would support a conspiracy claim. And Mr. Monster cannot conspire with himself as CEO of Epik or Anonymize. The Washington Supreme Court has held that "a conspiracy could not exist between an individual and his wholly-owned corporation" or "between a parent corporation . . . and its wholly-controlled subsidiary[.]"*Corbit v. J. I. Case Co.*, 70 Wash. 2d 522, 528 n.3 (1967)); *see also Seaside Inland Transp. v. Coastal*

1    *Carriers LLC*, 2019 WL 4918747, at *10 (E.D. Wash. Oct. 4, 2019) (Court granted summary

2    judgment dismissing civil conspiracy claims because "the coordinated activities between [a

3    company, its owner and CEO and his wife,] and their wholly-owned companies are those of a

4    single enterprise."); *Linehan v. Allianceone Receivables Mgmt., Inc.*, 2016 WL 1408089, at *3

5    (W.D. Wash. Apr. 11, 2016) ("Where an agent is acting within the scope of his or her agency,

6    the agent's acts are legally considered to be the acts of the principal; thus, there can be no

7    conspiracy.").

8        Because Creatd fails to allege a conspiracy of two or more people, its civil conspiracy

9    claim must be dismissed.

10       **G.    Unjust Enrichment**

11       To plead an unjust enrichment claim in Washington, a plaintiff must plausibly allege "(1)

12    that [defendant] received a benefit, (2) at [plaintiff's] expense, and (3) the circumstances make it

13    unjust for [the defendant] to retain the benefit without payment." *Cousineau v. Microsoft Corp.*,

14    992 F. Supp. 2d 1116, 1129 (W.D. Wash. 2012) (citing *Young v. Young*, 164 Wash. 2d 477,

15    484-85 (2008)). Creatd alleges (1) the Monster Parties have received the benefit of the Domain

16    Name, (2) they have retained the Domain Name at Creatd's expense, and (3) it is unjust for the

17    Monster Parties to retain the Domain Name. (Am. Counterclaim at ¶¶ 158-59.)

18       The Monster Parties argue that Creatd has not identified any benefit they have received.

19    (Monster Mot. at 11.) Creatd alleges the Monster Parties have been "unjustly enriched by their

20    refusal to transfer the Domain Name to Creatd" but have not provided any supporting factual

21    allegations. (Am. Counterclaim at ¶ 159.) Creatd alleges the Monster Parties are offering the

22    Domain Name for sale, but not that they have sold it for a profit. Unjust enrichment requires

23    showing defendants received a benefit, not just that they may receive a benefit in the future. *See*

*Kautsman v. Carrington Mortg. Servs., LLC*, 2017 WL 4354873, at *4 (W.D. Wash. Oct. 2, 2017) (Dismissing unjust enrichment claims because "Plaintiffs have plead that the fees at issue were added to the outstanding loan balance, but have not asserted they ever paid these amounts to CMS."). Because Creatd fails to allege that the Monster Parties have received a benefit, its unjust enrichment claim must be dismissed.

## V.     CONCLUSION

For the foregoing reasons, the Court hereby orders:

(1)     The Monster Parties' Motion to Dismiss (dkt. # 30) is GRANTED in part and DENIED in part.

(2)     Creatd's claims for contributory violation of the ACPA, unfair competition, tortious interference with business relations, civil conspiracy, and unjust enrichment are hereby DISMISSED.

Dated this 23rd day of May, 2022.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 18